UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO OCHOA FIERROS,<br><br>Plaintiff,<br><br>v.<br><br>ALEJANDRO MAYORKAS, et al.,<br><br>Defendants. | No. 1:19-cv-01515-NONE-SKO<br><br>ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND AND DIRECTING THE CLERK OF COURT TO SUBSTITUTE ALEJANDRO MAYORKAS IN AS THE DEFENDANT IN THIS ACTION IN PLACE OF KEVIN K. MCALEENAN<br><br>(Doc. No. 10) |

On October 25, 2019, plaintiff Roberto Ochoa Fierros filed the complaint commencing this lawsuit, seeking review of the denial of his application for adjustment of status pursuant to § 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255.  (Doc. No. 1.)  On January 22, 2020, defendants Kevin K. McAleenan, the former Acting Secretary of the Department of Homeland Security,[1] and Lynn Q. Feldman, field officer director for the Fresno office of the United States Citizenship and Immigration Services, filed a motion to dismiss.  (Doc. No. 10.)

---

[1]  Alejandro Mayorkas was sworn in as Secretary of the Department of Homeland Security on February 2, 2021.  The Clerk of the Court is directed to substitute Alejandro Mayorkas in as the defendant in this action in place of named defendant McAleenan.  *See* Fed. R. Civ. P. 25(d) (when public officer ceases to hold office, "[t]he officer's successor is automatically substituted as a party" and "[t]he court may order substitution at any time").

1

**BACKGROUND**

Plaintiff's complaint (Doc. No. 1) alleges as follows. When plaintiff was 15 years old, he entered the United States without inspection. When plaintiff was 17, he voluntarily removed to Mexico and reentered without inspection several days later. Thereafter plaintiff has married a United States citizen. Apparently other than to attend a consular interview in Mexico, plaintiff has remained in the United States since his marriage.

On November 16, 2015, plaintiff filed a Form I-485 to apply for an adjustment of his immigration status. The United States Customs and Immigration Services denied the application on the grounds that plaintiff was inadmissible pursuant to Immigration and Nationality Act § 212(a)(9)(C)(i)(I), 8 U.S.C. § 1182(a)(9)(C)(i)(I).[2] Plaintiff sought reconsideration, which was denied on February 20, 2019. In this action plaintiff seeks review of the denial of his application.

**SUBJECT-MATTER JURISDICTION**

Although neither party has addressed the court's subject-matter jurisdiction in their briefing on the pending motion, the court will do so *sua sponte*. *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002) (citing Fed. R. Civ. P. 12(h)(3)). The complaint's jurisdictional statement (Doc. No. 1 at 2) states that the court has subject-matter jurisdiction over this action, in part, under 5 U.S.C. § 701, which falls within the Administrative Procedure Act. Under 5 U.S.C. § 704, courts may review a "final agency action for which there is no other adequate remedy in a court[.]" Final determinations of applications for adjustment of status made by the United States Citizenship and Immigration Services ("USCIS") may be reviewed under that statute. *See Mamigonian v. Biggs*, 710 F.3d 936, 941–42 (9th Cir. 2013) (where an alien sought adjustment-of-status review from USCIS after marrying American citizen, "for a court to hear a case like this pursuant to the APA, there must be 'final agency action for which there is no other adequate remedy in a court'" (quoting 5 U.S.C. § 704)).

Here, plaintiff alleges he exhausted his administrative remedies and that defendants "issued a final decision, denying Plaintiff's application for Adjustment of Status." (Doc. No. 1 at

---

[2] This order repeatedly considers parts of 8 U.S.C. § 1182(a)(9). Hereinafter, all sub-provisions of that section will be referred to as § 9. Thus, § 1182(a)(9)(C) will be referred to as § 9(C).

2

3.) Attached to the complaint are letters from the USCIS to plaintiff, stating that it denied his application for an adjustment of status and his motion for reconsideration thereof. (*Id.* at 18, 26.) Given this preliminary review, it appears that the USCIS's action was final for present purposes. Defendants do not argue otherwise. Given that nothing has been raised by the parties' briefing to the contrary, the court concludes that the USCIS's denial of plaintiff's application is a reviewable final agency action. *See* 5 U.S.C. § 704.

## LEGAL STANDARDS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation omitted). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Naruto v. Slater*, 888 F.3d 418, 421 (9th Cir. 2018) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). However, the court need not accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988 (citations omitted). Neither must the court "assume the truth of legal conclusions cast in the form of factual allegations." *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008) (citation omitted).

## DISCUSSION

**A.   Statutory Background**

This case primarily concerns the construction of §§ 9(B) and 9(C). As noted above, plaintiff was determined to be inadmissible under § 9(C). As relevant here, and as explained in

3

more detail below, aliens who are unlawfully present in the United States for more than one year, and who then enter the country again without being admitted, are inadmissible. § 9(**C**)(i)(I). Subparagraph (B) provides an exception to the definition of "unlawfully present" for certain minors. § 9(**B**)(iii). The central dispute in this case is whether the exception for minors set forth in subparagraph (B) applies to plaintiff, given that he was determined to be inadmissible under subparagraph (C). The court will begin its analysis with the text of the statute. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."); *Acosta v. Gonzales*, 439 F.3d 550, 556 (9th Cir. 2006) (in interpreting § 1182(a)(9)(B)–(c), "[w]e begin with the plain language of the statute."), *overruled on other grounds by Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (*en banc*). Sections 9(B) and (C) provide as follows:

> (B) Aliens unlawfully present
>
> > **(i)** In general
> >
> > Any alien (other than an alien lawfully admitted for permanent residence) who--
> >
> > > [was unlawfully present in the United States in certain circumstances]
> >
> > is inadmissible.
> >
> > (ii) Construction of unlawful presence
> >
> > For purposes of this paragraph, an alien is deemed to be unlawfully present in the United States if the alien is present in the United States after the expiration of the period of stay authorized by the Attorney General or is present in the United States without being admitted or paroled.
> >
> > (iii) Exceptions
> >
> > > (I) Minors
> > >
> > > No period of time in which an alien is under 18 years of age shall be taken into account in determining the period of unlawful presence in the United States **under clause (i)**.[3]

---

[3] Hereinafter, the court refers to the exception in this paragraph as the "minor exception."

4

* * *

(v) Waiver

The Attorney General has sole discretion to waive **clause (i)** [in irrelevant circumstances].

(C) Aliens unlawfully present after previous immigration violations

(i) In general

Any alien who--

(I) has been unlawfully present in the United States for an aggregate period of more than 1 year, . . .

and who enters or attempts to reenter the United States without being admitted is inadmissible.

8 U.S.C. § 1182(a)(9) (certain paragraph breaks omitted) (emphases added).

**B.     Analysis**

Defendant argues § 9(C)(i) controls here because plaintiff was unlawfully present for more than one year given that he admits in his complaint filed in this action that he entered this country without inspection at age 15 and left voluntarily at age 17.  (Doc. No. 10 at 3.)  Defendant further argues that plaintiff then "reenter[ed] the United States without being admitted" under § 9(C)(i) when he reentered the United States without inspection several days after his voluntary removal.

Plaintiff contends that he was not "unlawfully present" in the United States from ages 15–17 for purposes of § 9(**C**) because the minor exception in § 9(**B**) applies to him.  (Doc. No. 19 at 4–9.)  As shown above, § 9(**B**) applies generally to "aliens unlawfully present" (as opposed to "aliens unlawfully present after previous immigration violation") and has three relevant components.  Section 9(**B**)(i) renders certain aliens who were or are "unlawfully present in the United States" inadmissible.  Clause (ii) provides a definition, "[f]or purposes of this paragraph," of being unlawfully present in the United States.  Clause (iii) provides exceptions, including the minor exception.

According to plaintiff, the minor exception applies to both § 9(B) and (C).  (Doc. No. 19 at 2–6.)  However, the text of the minor exception clearly provides that it applies when

5

1    "determining the period of unlawful presence in the United States *under clause (i)*." 8 U.S.C.
2    § 1182(a)(9)(B)(iii)(I) (emphasis added). As used in the statute, "clause (i)" refers to clause (i) of
3    subparagraph (B), not subparagraph (C). Thus, under the plain language of the statute, the minor
4    exception does not apply to plaintiff because he was deemed inadmissible under § 9(**C**)(i), not
5    § 9(**B**)(i).

6        The Ninth Circuit considered a similar issue in *Acosta*. There, the plaintiff had been
7    unlawfully present in the United States for more than one year and then re-entered the United
8    States without authorization to do so. 439 F.3d at 552. After marrying a United States citizen, he
9    sought an adjustment of his status. *Id.* The requested adjustment was denied under § 9(C)(i)(I).
10   *Id.* Plaintiff Acosta argued that he was eligible for a waiver under § 9(B)(v). He argued that
11   § 9(B) and 9(C) must be read together "because Congress intended them to function jointly. He
12   contend[ed] that Congress intended to incorporate the definition of 'unlawful presence' and its
13   descriptive elements into both parts of the statute." *Id.* at 557. The Ninth Circuit disagreed. The
14   court noted that the waiver exception in § 9(B)(v) explicitly applied only to "clause (i)." *Id.* That
15   referred to "clause (i) of subparagraph (B)." *Id.* Accordingly, the waiver exception set forth in
16   § 9(B)(v) was found by the court not to apply to plaintiff Acosta, because he had been deemed
17   inadmissible under § 9(C). *Id.* at 557–58.

18        Likewise, here, plaintiff seeks to rely on an exception in § 9(B), but he was deemed
19   inadmissible under § 9(C). As in *Acosta*, the claimed exception in § 9(B) refers explicitly to
20   "clause (i)." *See Acosta*, 549 F.3d at 557–58; *compare* 8 U.S.C. § 1182(a)(9)(B)(iii)(I) *with id.*
21   § 1182(a)(9)(B)(v). Thus, as in *Acosta*, the exception plaintiff seeks to rely on extends only to
22   "clause (i) of subparagraph (B)," and does not apply to clause (i) of subparagraph (C). *See*
23   *Acosta*, 438 F.3d at 557–58.

24        Other district courts in this circuit have, following the decision in *Acosta,* reached the
25   same result when considering the minor exception. *Garcia Razo v. U.S. Department of State*, No.
26   2:18-cv-01569-JAM-DB, 2019 WL 1865924, at *3 (E.D. Cal. April 25, 2019) ("Plaintiffs
27   argument that the consular officer's decision was not legitimate or bona fide because it did not
28   apply a subsection (B) exception to subsection (C) is unpersuasive. The Ninth Circuit previously

1 declined to impose a similar interpretation of the interaction between these two subsections.");
2 *Dominguez v. U.S. Dep't of State*, No. CV 19-5327 PSG (SSX), 2020 WL 5026878, at *6 (C.D.
3 Cal. May 22, 2020) ("But the plain language of 8 U.S.C. § 1182(a)(9)(B)(iii)(I) specifically states
4 that the minor exception applies 'under clause (i)' of subsection (B).  Nowhere does the statute
5 direct that that exception should be taken into account in subsection (C)." (citations omitted)).

      The court finds the decisions in *Garcia Razo* and *Dominguez* persuasive.  The facts here are substantially the same as those the court confronted in *Garcia Razo*.  As with the plaintiff there, plaintiff here entered the United States without inspection as a minor; stayed for over one year; left and re-entered the United States, again without authorization; and then married a United States citizen.  As in *Garcia Razo*, under the facts alleged in the complaint in this case, the minor exception does not apply.  *See Garcia Razo*, 2019 WL 1865924, at *1, 3.

      Plaintiff advances five arguments against the drawing of this conclusion.  First, plaintiff argues that definition of "unlawfully present" must mean the same thing in § 9(B) as it does in § 9(C) under the rule of *in pari materia*.  (Doc. No. 19 at 5–6.)[4]  In *Acosta*, the Ninth Circuit considered this argument, but without using the phrase *in pari materia*.  439 F.3d at 557 ("Where Congress uses words more than once in the same statute, we presume that those words have the same meaning.").  However, the Ninth Circuit determined that the statute's meaning was plain from its language and declined to adopt the contrary interpretation advanced here by plaintiff that would incorporate the definition of 'unlawful presence' and its descriptive elements into both sections 9(B) and § 9(C).  *Id.* at 558 ("We would think it exceedingly strange that Congress used these phrases synonymously, and we therefore decline to impose Acosta's suggested interpretative scheme.")  Because, as the Ninth Circuit concluded in *Acosta*, the language of the statute is plain, this court must decline to adopt plaintiff's suggested interpretation.

      Second, plaintiff argues that Congress has expressed its intent to create exceptions for minors in numerous areas of immigration law.  (Doc. No. 1 at 11.)  Be that as it may, there are also many areas in which Congress has not excepted minors.  *See, e.g., Plyler v. Doe*, 457 U.S.

---

[4] Under that rule of statutory construction, a word used in a statute will have "a consistent meaning in a given context." *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972).

1  202, 226 (1982) ("To be sure, like all persons who have entered the United States unlawfully,
2  these children are subject to deportation."). Plaintiff has not established that Congress intended to
3  provide an exception for minors in this situation.

4  Third, citing to the decision of *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994),
5  plaintiff asserts in his complaint that a consulate's previous practice of applying the minor
6  exception to § 1182(a)(9)(C) applies retroactively to him. (Doc. No. 1 at 11–13.) Specifically,
7  plaintiff alleges that when plaintiff unlawfully entered the United States as a minor "the United
8  States Consulate in Ciudad Juarez, Mexico interpreted the statute to except such minors from
9  inadmissibility under [§ 9(C)(i).]" (Doc. No. 1 at 13.) According to an exhibit attached to
10 plaintiff's complaint, the practice to which he refers ended in 2008. (*Id.* at 48.) Plaintiff argues
11 that refusing to apply the minor exception would increase his liability for past conduct, which, he
12 contends, is impermissible under the decision in *Landgraf*. (*Id.*)

13 In *Landgraf*, a plaintiff sued her employer and its owner for sexual harassment under Title
14 VII of the Civil Rights Act. 511 U.S. at 248. Following a bench trail, judgment was entered in
15 favor of the defendants and plaintiff appealed; while her appeal was pending, the President signed
16 a bill that might have changed the outcome of her trial. *Id.* at 248–49, 253. The plaintiff argued
17 that the law had retroactive effect and she should receive a new trial. *Id.* at 250. The Supreme
18 Court rejected the argument and instead announced a two-step process to determine whether a
19 statute would be applied to conduct arising before its enactment. The first step "is to determine
20 whether Congress expressly prescribed the statute's reach." *Id.* at 280. If Congress has not done
21 so, the second step is to "determine whether the new statute would have retroactive effect, *i.e.,*
22 whether it would impair rights a party possessed when he acted, increase a party's liability for
23 past conduct, or impose new duties with respect to transactions already completed." *Id.* If the
24 statute "would operate retroactively," it will not apply to events that took place before its
25 enactment "absent clear congressional intent favoring such a result." *Id.*

26 Here, plaintiff argues that the alleged change in policy—previously, a consulate applied
27 the minor exception to those such as him but USCIS refuses to do so now—creates the type of
28 impermissible retroactive effect that *Landgraf* prohibits. (Doc. No. 1 at 13.) However, *Landgraf*

8

1   considered the retroactive effect of statutes and dealt extensively with statutory language and
2   principles of statutory construction.  Plaintiff provides no precedent establishing that those
3   principles apply in the context in which this case arises.
4       Fourth, and relatedly, plaintiff argues that defendants have at times interpreted the minor
5   exception differently than they do now.  (Doc. No. 1 at 12–13.)  Generally, agencies may change
6   their interpretations of statutes.  *See Nat'l Cable & Telecommunications Ass'n v. Brand X Internet*
7   *Servs.*, 545 U.S. 967, 981 (2005) ("An initial agency interpretation is not instantly carved in
8   stone.  On the contrary, the agency must consider varying interpretations and the wisdom of its
9   policy on a continuing basis." (citation omitted)).  Plaintiff has not provided any legal authority to
10  support his contention that the agency's prior, inconsistent interpretation of the minor exception is
11  dispositive here.
12      Finally, plaintiff contends that it "does not make sense" to apply the minor exception to
13  § 9(B) but not to 9(C) because the only definition of "unlawful presence" is in § 9(B).  (Doc. No.
14  19 at 13.)  However, even assuming the same general definition of "unlawful presence" applies to
15  both 9(B) and 9(C), Congress is certainly capable of creating exceptions that apply in only some
16  situations and not others.  *See Dominguez*, 2020 WL 5026878, at *6 ("The reason section
17  1182(a)(9)(B) contains a 'minor exception' and section 1182(a)(9)(C) does not is because
18  Congress considered the conduct at issue in section 1182(a)(9)(C)(i) (multiple illegal entries)
19  more serious and culpable than that described in section 1182(a)(9)(B) (a one-time illegal entry)."
20  (quoting *Moreira v. Cissna*, No. 19-CV-1642, 2020 WL 1035246, at *5 (E.D. Pa. Mar. 3, 2020))).

21  **C.   Leave to Amend**
22      Neither party has discussed in their briefing whether the court should grant plaintiff leave
23  to amend if defendants' motion to dismiss is granted.  However, it appears that further
24  amendment would be futile here since plaintiff was found to be inadmissible under
25  § 1182(a)(9)(C) and the only claimed exception upon which he now relies does not apply.
26  /////
27  /////
28  /////

Nonetheless, out of an abundance of caution, the court will grant plaintiff leave to file an amended complaint within thirty (30) days of the date of service of this order.[5]

## CONCLUSION

Accordingly,

1. The Clerk of the Court is directed to substitute defendant McAleenan with "Alejandro Mayorkas, Secretary of the Department of Homeland Security";
2. Defendants' motion to dismiss (Doc. No. 10) is granted; and
3. If plaintiff wishes to pursue this action he shall file an amended complaint within thirty (30) days of the date of entry of this order.

IT IS SO ORDERED.

Dated:   **August 10, 2021**                            _____
                                                                                    UNITED STATES DISTRICT JUDGE

---

[5] The court is unaware, for instance, whether plaintiff might qualify for the exception under § 9(C)(iii), which permits waivers "in the case of an alien who is a VAWA self-petitioner" in certain circumstances. The briefing before the court also does not address the effect of plaintiff's alleged "credible fear determination from the Asylum Office." (Doc. No. 1 at 5.) Therefore leave to amend is being granted to the extent plaintiff can in good faith assert a cognizable claim for relief.

10